UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER EVAN DRESEL,

    Plaintiff,

v.

PENSION PLAN OF THE PACIFIC NORTHWEST LABORATORIES, BATTELLE MEMORIAL INSTITUTE,

    Defendant.

CASE NO. C14-1665 MJP

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The Court, having received and reviewed:

1. Defendant's Motion for Summary Judgment (Dkt. No. 14), Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 20), and Defendant's Reply in Support of Defendant's Motion for Summary Judgment (Dkt. No. 28);

2. Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 23), Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 28), and Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 29);

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that Defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment is GRANTED.

**Background**

Plaintiff was hired by Defendant Battelle on October 5, 1992.  On February 22, 2010 (at the age of 54), Plaintiff began the first of a series of three one-year leaves of absence from the company.  Towards the end of the third year of the leaves of absence, Defendant advised Plaintiff that it did not have the funding to return him to his position.  Following the expiration of the third leave of absence (February 21, 2013), Plaintiff did not return to work at Battelle.

In April 2013, Plaintiff inquired about early retirement benefits (a right which can accrue to "Members" of Defendant's Pension Plan ["the Plan"] between the ages of 55 and 65).  An attorney for the Plan sent him a letter on April 15, 2013 advising him that

> Because you did not return to employment with [Battelle] within three years of beginning your leave, your pension benefits will be determined based on your service through February 22, 2010 and your age on that day.

Litteral Decl., Ex. C at BA 1-2.  Because he was 54 on February 22, 2010, Plaintiff was denied the right to the early retirement benefit.  Plaintiff filed an internal appeal of the denial.  Battelle (as the Plan Administrator), through their Vice President of Benefits (Ms. Litteral), denied the appeal in a letter dated August 7, 2013. (Litteral Decl., Ex. C at BA 5-40.)

**Discussion/Analysis**

Standard of review

*De novo review?*

The Plan grants the Plan Administrator discretion to interpret Plan provisions and determine who is eligible for benefits (as long as those decisions are not arbitrary or capricious).

(Dkt. No. 15-1, Ex. A, Plan §§ 12.1, 12.6.)  In such cases, a reviewing court usually applies an "abuse of discretion" standard of review.  <u>Abatie v. Alta Health and Life Ins. Co.</u>, 458 F.3d 955, 967 (9th Cir. 2006).

In the Plan, there is a provision for a "Committee:"

> Battelle Memorial Institute shall appoint a Committee to be responsible for specific duties not otherwise assigned to the Plan Administrator or reserved by the Battelle Council, including but not limited to responsibility for claims appeal procedures as provided for in Section 12.4.

Plan, § 12.2.  Plaintiff argues that, because it was Ms. Litteral (not the Committee) who made the decision to deny Plaintiff's appeal, the Court should review her decision *de novo*.  He asserts that she was not authorized to decide the appeal and thus no deference should be accorded her decision.  *See* <u>Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan</u>, 349 F.3d 1098, 1105 (9th Cir. 2003)(no deference is owed a decision denying benefits made by "a body other than the one authorized by procedures set forth in the benefits plan.").

It is not a persuasive argument.  On December 20, 2007, Battelle issued a memo entitled "Delegation of Plan Administrator" transferring to Ms. Litteral all the functions of that role.  The memo of delegation sent to Ms. Litteral was intended to document

> …the delegation to you of Battelle's duties and responsibilities under ERISA as Plan Administrator for all Battelle sponsored employee benefits plans…
> * * *
> … [Y]our primary duties include:
> * * *
> 3.  Paying benefits in accordance with the terms and conditions of the plans.

Def Mtn, Dkt. No. 15-2, Ex. B.

The Plan states clearly that the Committee is responsible only for "duties not otherwise assigned to the Plan Administrator."  In the face of the blanket delegation to Ms. Litteral of all the Plan Administrator responsibilities with a specified "primary duty" of overseeing the

payment of benefits, the Committee no longer had any responsibilities in this area and the Court is required to accord some degree of deference to her decision.

*Abuse of discretion?*

Plaintiff argues further that, even if the Court rejects *de novo* review and opts for an "abuse of discretion" standard, the application of that standard must be limited because of the Plan Administrator's conflicts of interest. He makes several arguments in this regard:

1. <u>"Structural conflict of interest:"</u> Any time a plan administrator is also the funding source for the Plan's benefits, there is a "structural conflict of interest." <u>Abatie</u>, 458 F.3d at 965. But in the absence of any evidence of malice, self-dealing or a history of "parsimonious claim-granting," this type of conflict creates a very low barrier. <u>Id.</u> at 968. Plaintiff's briefing is devoid of any such evidence, particularly any historical data indicating a pattern of denying these sorts of claims. This factor has little impact on the deference accorded this plan administrator under an abuse of discretion review.

2. <u>Single decision-maker v. decision by committee</u>: Plaintiff wants Battelle's decision to delegate these types of decisions to a "loyal decision-maker" rather than to a committee to be considered as further evidence of a conflict of interest. Since there is nothing in the Plan to prevent Battelle from appointing a committee comprised of other Battelle employees, this factor does not weigh heavily against Defendant.

3. <u>Insufficient independence</u>: At the time that Plaintiff filed his response, the discovery he had been provided raised some question in his mind as to whether Ms. Litteral had been involved in the original decision by the Plan attorney to deny the early retirement benefits. (*See* Pltf Response at 7-9.) Defendant responds that the appeal denial letter from Ms. Litteral (Dkt. No. 15-3, Ex. C) demonstrates that she provided "her own

independent reasons" and gave no deference to the initial decision. (Def Reply at 4.)

The Court does not find this argument particularly compelling. More to the point, Defendant also provides the interrogatory responses submitted to Plaintiff containing a denial that Ms. Litteral had any involvement in the original decision. (*See* Dkt. No. 28-1, at 9, Interrog. No. 12.)

The Court finds Defendant's interrogatory response to be determinative (for purposes of this motion) on the issue of Ms. Litteral's involvement with the original decision regarding Plaintiff's eligibility for early retirement benefits. Furthermore, in light of the ruling in Plaintiff's favor, the Court finds the issue of the degree of Ms. Litteral's involvement in the original decision to be non-determinative.

The Court finds that the abuse of discretion standard of review is appropriate here and that Defendant abused its discretion in denying Plaintiff's early retirement benefits.

Early retirement benefits decision

Several provisions of the Plan come into play in analyzing the early retirement issue and the merits of both sides' positions:

> **§ 1.15  Early Retirement Age** means the later of age fifty-five (55) and completion of ten (10) years of Credited Service for Vesting.
>
> **§ 1.16  Early Retirement Date** means the first day of the month after the Member's termination of employment with all Battelle Group Members, after attainment of Early Retirement Age, but prior to the member's Normal Retirement Date.

(Ex. A, Plan at 20.)

1       Both sides agree that "early retirement" is available to "Members" (*see* Plan § 1.28[1]) and
2  that a Member can be either an Eligible Employee or "former Eligible Employee," as defined by
3  the Plan.  The definitions of those terms are not necessary to the Court's analysis as both sides
4  agree that, at the very least, Plaintiff was a "former Eligible Employee" when he sought his early
5  retirement benefits.
6       Defendant's position can be summarized as: Plaintiff's last day as an "Eligible
7  Employee" was February 21, 2010 (since he did not return to active employment at the
8  expiration of his 3-year leave of absence); Plaintiff was 54 at that time.  Plaintiff had to be 55 to
9  qualify for the Early Retirement Benefit (there is no dispute that Plaintiff had completed 10 years
10 of Credited Service); because "he was no longer a Battelle employee when he reached that age…
11 he had no employment from which *to* retire."  (Dkt. No. 28, Def Reply at 5; emphasis in
12 original.)
13      It is a flawed analysis proceeding from a faulty assumption that "retirement" is a process
14 which can only occur at the point when an employee ceases active employment.  There is
15 another way of looking at the concept of "retirement" in the context of ERISA that conforms to
16 both the language of the Plan and the case law, and under that concept of "retirement"
17 Defendant's analysis fails.
18      The ERISA case law views "retirement" as the point at which an employee *or former*
19 *employee* becomes eligible for certain benefits to which they are entitled under the pension plan.
20 A case in point is Canseco v. Construction Laborers Pension Trust, 93 F.3d 600 (9th Cir. 1996).

---

[1] "**Member** means an Eligible Employee who has met all the participation requirements of this Plan, has become enrolled in the Plan and who has an Accrued Benefit under the Plan. Member also includes a former Eligible Employee with an Accrued Benefit under the Plan." (Ex. A, Plan at 17.)

After 30 years in the construction industry, Canseco became permanently disabled and retired at the age of 56.  Through an erroneous interpretation of his pension plan, Canseco was informed that he did not meet the eligibility requirement for normal retirement benefits and so he did not apply.  In 1987, the Ninth Circuit held the pension plan's eligibility requirements to be arbitrary and capricious and required the trustees of the plan to lower the eligibility requirements.  (Ponce v. CLPT for Southern Calif., 774 F.2d 1401 (9th Cir. 1985); *cert. denied*, 479 U.S. 890 (1986).)

Believing he now met the lowered standards, Canseco applied for pension benefits.  What happened next describes perfectly how the concept of "retirement benefits" functions in ERISA:

> However, after paying Canseco his initial benefits, the Trustees discovered that the records were erroneous, and that Canseco had actually accrued nearly 23 years of service before becoming disabled.  Because Canseco had attained well over the 15 years required for eligibility, the Trustees concluded *he had been eligible for normal retirement benefits* of $988 a month beginning in 1981, *when he reached age 62*, the minimum age required for eligibility under the [pension] plan.

Canseco, 93 F.3d at 602 (emphasis supplied).

In other words, eligibility for retirement benefits under the pension plan was not calculated at the date the employee ceased working (i.e., Canseco could not be denied "normal retirement benefits" because he stopped working before he reached age 62), but rather was calculated when he reached the eligible age regardless of his employment status with the company.

The language of the Plan at issue here supports this reading of the term:

> **§ 1.45 Retirement** means a *Member's election of commencement of benefits* under this plan in the form of his Normal Retirement Benefit, Early Retirement Benefit, Deferred Vested Benefit, Late Retirement Benefit, or Disability Retirement Benefit, as the case may be.

(Ex. A, Plan at 20.) (emphasis supplied).  Since "Member" includes "former Eligible Employee," there is clearly no contemplation within the plan that an applicant for retirement benefits needs to

be in active employment (i.e., not have been "terminated") at the point where he or she becomes eligible for the benefit.  After the point when Plaintiff reached the age of 55 (and before he reached 65), he was entitled to "elect the commencement" of his Early Retirement Benefit, assuming that he met all other requirements.  The Court finds that Plaintiff did meet the other requirement (i.e., ten years of Credited Service), and should have been granted that benefit under the Plan.

Interestingly, Defendant gives some indication in its original motion that it has a similar understanding of how this aspect of the Plan functions.  In a footnote to its conclusion that Plaintiff was not entitled to an Early Retirement Benefit, Defendant states:

> The fact that Dresel was not entitled to an Early Retirement Benefit does not mean that he was deprived of post-employment benefits under the Plan, it simply means that he was not entitled to that particular benefit.

Def Mtn at 7, n. 4.

Defendant justifies this distinction by arguing that, because Plaintiff never returned to active employment following the commencement of his leave of absence, he was "terminated" from employment as of February 22, 2010 (the date he began the first of three one-year leaves of absence) and thus his failure to reach age 55 while still actively employed disqualifies him from the early retirement benefit.  This argument likewise fails to persuade.  For one thing, the Plan nowhere defines what constitutes "termination" or under what circumstances (other than the obvious situation of being fired from the job) an employee is considered "terminated." Defendant provides no further guidance in statute or case law to assist the Court in that analysis.

More to the point, however, the Court agrees with Plaintiff: it does not matter, for purposes of determining eligibility for early retirement benefits, when he was "terminated."  To review the terms of the Plan,

> **§ 1.15  Early Retirement Age** means the later of age fifty-five (55) and completion of ten (10) years of Credited Service for Vesting.
>
> **§ 1.16  Early Retirement Date** means the first day of the month after the Member's termination of employment with all Battelle Group Members, after attainment of Early Retirement Age, but prior to the member's Normal Retirement Date.

(Ex. A, Plan at 20.)  The Court notes that § 1.15 contains no requirement of "active employment," thus Plaintiff attained "Early Retirement Age" on the day that he turned 55.  His "Early Retirement Date" is measured by two interdependent criteria: (1) "the first day of the month after the Member's termination of employment"; (2) "after attainment of Early Retirement Age, but prior to the member's Normal Retirement Date."[2]  It does not matter whether the Court considers Plaintiff terminated as of February 22, 2010 or February 22, 2013; he attained his Early Retirement Date under either calculation and (as demonstrated by the Canseco opinion) became eligible to "elect the commencement of benefits" at that point.

Defendant attempted at oral argument to introduce an argument heretofore unheard in this litigation: that Plaintiff was in fact eligible, not for an Early Retirement Benefit, but instead for a "Deferred Vested Benefit" under § 4.3 of the Plan:

> **§ 4.3 Deferred Vested Benefit.** A Member who terminates employment with all Battelle Group Members prior to qualifying for either an Early Retirement Benefit or a Normal Retirement Benefit shall be eligible for a Deferred Vested Benefit.

(Ex. A, Plan at 28.)  The argument is unavailing for two reasons.  First (as demonstrated *supra*), Plaintiff did qualify for an Early Retirement Benefit and therefore did not need access to this alternate form of pension.  The fact that Plaintiff was never offered a Deferred Vested Benefit at

---

[2] The only other requirement is that Plaintiff have been a "Member" at that point – since both sides agree that he was a "former Eligible Employee" throughout the leave of absence period, he qualifies as a Member under the terms of the Plan.

any time during his post-employment process with Defendant further demonstrates the irrelevance of this option to these proceedings.

Second, "[t]he general rule… in [the Ninth Circuit] and in others, is that a court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process." Harlick v. Blue Shield of California, 686 F.3d 699, 719-20 (9th Cir. 2012). The rationale underlying this rule is found in a line of cases holding that

> [r]equiring that plan administrators provide a participant with specific reasons for denial "enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts."

Id. at 720 (quoting Mitchell v. CB Richard Ellis Long Term Disability Plan, 611 F.3d 1192, 1199 n. 2 (9th Cir. 2010) and Jebian, 349 F.3d at 1104 (9th Cir. 2003). The fact that Defendant raised the "Deferred Vested Benefit" defense for the first time in oral argument (having had 72 pages of briefing and an entire administrative appeal process to do so earlier) underscores the wisdom of this requirement.

**Conclusion**

Plaintiff was a qualified Member under the terms of the Plan who reached Early Retirement Age and, following attainment of his Early Retirement Date, submitted a legitimate request for his Early Retirement Benefit. The Court finds that it was an abuse of discretion for Defendant to deny that request. Accordingly, the Court GRANTS Plaintiff's motion for summary judgment and enters a declaratory judgment declaring him entitled to his early retirement benefits.

Defendant's motion for summary judgment is DENIED. A judgment granting the declaratory judgment sought by Plaintiff will be entered forthwith.

1

2    The clerk is ordered to provide copies of this order to all counsel.

3    Dated July 9, 2015.

4

5

6                                  A

                              Marsha J. Pechman

7                               United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT- 11